UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

vs.                                                                                  CRIMINAL NO. 3:20-CR-97(MPS)

STEPHEN STRANGE                                                November 4, 2021

**DEFENDDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM IN RESPONSE TO THIRD ADDENDUM TO PRESENTENCE REPORT**

The defense does not dispute that falsifying character letters in anticipation of sentencing is an aggravating fact. The more difficult question—the one justice requires—is precisely how does one measure the nature, scope, and consequence of this dishonesty? To that end the defense files this memorandum for the purpose of objecting to the application of the obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1 as well as denial of acceptance of responsibility pursuant to U.S.S.G. §3E1.1 as set forth in the third addendum to the presentence report. It addresses there and related issues herein.

**I.     DEFENSE COUNSEL FORMALLY WITHDRAWS EXHIBITS C, D, AND E AS DEFENSE EXHBIITS.**

As a preliminary matter, counsel for the defendant in the above captioned matter respectfully moves to withdraw Exhibits C, D, and E filed with the defendant's supplemental sentencing memorandum of August 19, 2021. He does so pursuant to Rule of Professional Conduct Rule 3.3 (c). *See Local Rule* 83.2(a)(recognizing authority of Connecticut Rules of Professional Conduct for District of Connecticut). That rule prohibits a lawyer from offering evidence he knows to be false and, to the extent that he has unwittingly offered false evidence, requires him to take remedial action. While counsel did not know the exhibits to be false at the time of filing, the subsequent events and the record leave no doubt about their lack of authenticity. Accordingly, counsel formally withdraws them as defense exhibits and disclaims any reliance upon them.

**II.     THE OBSTRUCTION ENHANCEMENT SET FORTH IN U.S.S.G § 3C1.1 OUGHT NOT APPLY BECAUSE THE MISSTATEMENTS AT ISSUE CONCERNED NEITHER RELEVANT CONDUCT NOR WERE THEY MATERIAL.**

The obstruction enhancement has two elements and only one is satisfied in this case. Alternatively, the materiality requirement included in many of the application comments ought to be applied as to the documents at issue here. The defense addresses each of these herein.

First, the character letters at issues do not concern relevant conduct as required by the guideline. Guideline §3C1.1 applies when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the offense of conviction *and*…the obstructive conduct related to…the defendant's offense of conviction and any relevant conduct…" (emphasis added). "The first clause of this guideline places a temporal requirement on defendant's obstructive conduct. *The second clause requires that the obstructive conduct relate in some manner to the underlying offense or related conduct*." *United States v. Khimchiachvilli*, 372 U.S. 75, 78 (2d Cir., 2004)(emphasis added). In *Khimchiachvilli*, the Second Circuit surveyed authorities concerning the universe of misrepresentations criminal defendants made in the course of determining the propriety of the obstruction enhancement as applied to a false-statements in a CJA affidavit. It concluded that amendments to the Sentencing Guidelines demonstrated

> a common-sense definition of what constitutes obstruction of justice—conduct that willfully interferes with or attempts to interfere with the disposition of the criminal charges against a defendant. An enhancement for obstruction of justice is therefore only warranted 'if the court finds that the defendant willfully and materially impeded the *search for justice in the instant offense.*' *United States v. Zagari*, 111 F.3d 307, 328 (2d Cir., 1997)(emphasis added). Or, as we have written, the 'conclusion that 'obstruct,' in this context, relates to anything that can make it more difficult to carry our a just result in a criminal case is erroneous a matter of law.' [*United States v. Stroud*, 893 F.2d 504, 507 (2d Cir., 2004)](citations omitted).For a defendant's conduct to qualify as obstruction of justice, it must have the

2

'potential to impede' the investigation, prosecution, or sentencing of the defendant. *See United States v. McKay*, 183 F.3d 89, 95 (2d Cir., 1999). It cannot simply be a misrepresentation.

*Khimchiachvilli*, supra, 372 F.3d at 80; *see also United States v. Butters*, 513 Fed.Appx. 103, 105 (2d Cir., 2013)(remanding for further findings regarding intent where defendant falsely claimed to be United State citizen in bail interview).

Odious though Mr. Strange's false statements are, there is no nexus to the offense nor relevant conduct in this case.  First with respect to the letter purporting to be from Mr. Ellington, it depicts the aid-and-comfort Mr. Strange provided him when he was ill: that is not connected to the fraud at issue.  Second, the letter purporting to be from Mr. Kornegay describes Mr. Strange's value at a job that Mr. Strange held nearly two years after being fired from the job that was the venue for the current offense.  Finally, the letter purporting to be from Dr. Bala describes medical conditions, from which Mr. Strange actually appears to suffer, [1] that have nothing to do with the offense. With respect to this letter, the misrepresentation consists more of the claim that it came from a treating physician than that the underlying premises are fabricated. However, neither contention has anything to do with the offense or relevant conduct.  Accordingly, the obstruction enhancement is not warranted on this basis.

A hypothetical is instructive in this case.  Indeed, the misrepresentations at issue now bears a certain resemblance to the underlying offense.  But the reason for that is that both involve dishonesty, not because there is an evidentiary nexus.  Were this a drug offense, however, there

---

[1] Importantly, the medical records filed under seal as *Exhibit* B were obtained directly from the Rocky Mount Family Medical and that process was handled by Aissa Lugo, a paralegal in the Federal Defender's Office.  Mr. Strange's only participation in that process was signing a release that permitted counsel's office to access his medical records.

3

would be no doubt that the misrepresentations were unconnected to the underlying offense. Indeed, a defendant could commit this act with respect to sentencing for an offense of *any* nature. While it is obviously an affront to justice in all circumstances, it does not bear the connection to relevant or offense conduct required to the satisfy §3C1.1.

Alternatively, the obstruction enhancement should not apply on the grounds that the letters did not contain representations that were material to any determination this court had to make. Application note 4 to § 3C1.1 is instructive on this matter. As a preliminary matter, subsection (C) of note 4 contemplated the production of a "false, altered, or counterfeit document or record during a[]…judicial proceeding." While "documents" would seemingly include letters, the analysis cannot be that simple. Subsections (F)-(H) contemplate the provision of "materially false information" to the court, law enforcement, or probation, respectively. There cannot be a class of misrepresentation that is not obstruction if conveyed orally but is obstruction if conveyed in written form. Accordingly, there must be some implicit limitation on the character of the documents contemplated by application note 4(C).

There are two plausible scenarios. First, the materiality limitation could simply be applied. Second, the word "document" ought be read to mean "legal document" such as a will, mortgage, or negotiable instrument. This reading of subsection (C) is consistent with the rest of Application Note 4. First, within subsection (C) the commission also refers to "record[s]" which also connotes a formal set of documents with legal significance. Second, other statutes concerning false documents delineate between the legal consequence of the document at issue. For example, the Connecticut Statutes prohibiting forgery delineate by degree based upon documents' consequence: forgery in the first-degree concerns "money, stamps, securities, or other valuable instruments issued by a government or governmental instrumentality…or…stock[s], bond[s], or other instruments

4

representing interests or claims against a corporation….." C.G.S. §§ 53a-138. Second degree forgery concerns "instrument[s] which…evidence [or otherwise effect] a legal right, interest, obligation, or status" such as "deed[s], will[s], codicil[s] [and] contracts;) public records filed pursuant to law; written instruments created by public or governmental agencies; and physician's prescriptions." C.G.S. § 53a-139. Misdemeanor forgery in the third degree concerns "written instrument" which are writings "constituting symbol or evidence of value, right, privilege, or identification, which is capable of being used to the advantage or disadvantage or a some person." C.G.S. §§ 53a-137, 53a-140. The letters at issue in this case conveyed no such legally significant information. The only workable construction of application note 4(C) to §3C1.1 is to require that the document at issue have some meaningful capacity to alter the legal relationship between two parties. Finally, application note 5(C) states that "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation," does not warrant the obstruction enhancement. It makes this statement without reference to the form of the misrepresentation.

  The falsified letters in this case lack the aforementioned capacity and consequence as set forth by the Guidelines.  Application note 6 defines material evidence.  It is evidence "that, if believe, would tend to influence or affect the issue under determination." None of the falsified letters had that capacity.  Each letter spoke to, what the guidelines would call "specific offender characteristics:" Mr. Strange's health, employment, and community engagement. First, the guidelines are fairly clear that "employment record is not ordinarily relevant in determining whether a departure is warranted," U.S.S.G. § 5H1.5, and that "civic, charitable, or public service; employment related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11. With respect to both the

5

purported Kornegay and Ellington letters, neither includes material so compelling that it would warrant departure.

The letter purportedly from Dr. Bala presents a more nuanced issue. As noted, the medical records received by counsel directly from the Rocky Mount Clinic, sealed *Exhibit* B, suggest much of the substance of this letter is correct but the misrepresentation consists of the suggestion that a doctor—particularly this doctor—has signed off on the summary. It is true that the guidelines contemplate a departure for "extraordinary physical impairment." U.S.S.G. § 5H1.4. But the Bala letter does not make a case for such impairment. In fact, it says "Mr. Strange's condition is stable," so long as he continues to receive his treatment. Moreover, the defense has never argued for such a departure. To the extent that Mr. Strange's medical condition had been put into issue, it was as a consequence of the Covid-19 pandemic in the fall of 2020 prior to the advent of the vaccine. Mr. Strange is now vaccinated and that issue is mooted. Counsel filed the Bala letter in support of a request for designation to a medical facility, *see* Doc. No. 70, ¶4, not in support of a departure. Accordingly, this is not an issue of material consequence.

Ultimately, the materiality of the letters depends upon the weight the court intended to give them. The parties and the court all know from experience that the quality and impact of sentencing letters varies widely. In this case, it cannot be said that the letters were not an attempt to frame Mr. Strange and other dimensions of his life in a positive light and they were likely more polished than many letters submitted. On the other hand, however, any arguments implied in the letters or the supporting "evidence" they contained were not offered in support of a guidelines departure nor did they connect to the offense or relevant conduct. Nor did they go to the core of arguments the defense made in its initial sentencing memorandum. While the falsification of the letters in no way commends Mr. Strange to the court, this does not rise to the level of obstruction as a matter of law.

**III.    THE COURT SHOULD NOT DENY MR. STRANGE'S REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY PURSUANT TO §3E1.1.**

The court should not deny Mr. Strange's reduction for acceptance of responsibility on account conduct revealed since August 19, 2021. This is so for two reasons. First, provided that the court agrees with the defendant on the impropriety of the obstruction enhancement, a §3E1.1 denial is not warranted on those grounds. Second, application note 4 to this section notes that acceptance can coexist with the obstruction enhancement in "extraordinary circumstances" and the defense contends that these qualify.

Extraordinary circumstances are present in this case for several reasons. The court need only consider this if it has concluded that obstruction applies, therefore, the defense looks again to that guideline. Significantly, §3C1.1 application note 3 states that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." Once again, the defense—certainly defense counsel—takes candor to the court very seriously: none of these arguments should be construed as dismissive or cavalier towards what was done.  However, simply because obstruction is serious does not mean that all obstructions are equally serious.  First, assuming a connection to offense conduct, it is nonetheless attenuated in comparison to the universe of ways people obstruct justice. Second, no witness was threatened nor bribed, quintessential legal documents were not forged, and essential offense evidence was not destroyed: the nature of this obstruction is outside the "heartland" of obstructive conduct. *See e.g. United States v. Stewart*, 590 F.3d 93, 135-36 (2d Cir., 2009)("as both the Supreme Court and we have noted, variations from the Guidelines 'may attract the greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply'") quoting *United States v. Kimbrough*, 552 U.S. 85, 128 S.Ct. 558, 574-75 (2009). Third, this is an unsophisticated act and could not have taken

a high degree of planning. Fourth, Mr. Strange has had no other incidents during his nearly two-year pre-trial adjustment period: this appears to be the result of an eve of sentencing panic. Finally, the conduct at issue does not go to the heart of the offense; nor is it incompatible with an honest reckoning with what Mr. Strange did: this appears to be an attempt to portray other dimensions of Mr. Strange's life where he is now isolated and without friends or witnesses to assist in that effort. His recent conduct is not anathema to acceptance for his crime.

In the event that this constitutes obstruction under the guidelines, the defense contends that there are extraordinary circumstance nonetheless consistent with accepting responsibility.

**IV.     THIS ACT DEFIES CALCULATION BY THE GUIDELINES.**

There is no positive spin on Mr. Strange's conduct: it is undoubtedly an aggravating fact the defense presumes will be reflected in the sentence. However, the misrepresentations at issue do not easily fit into the guideline's tidy structure. Clearly, there is reason to be outraged by Mr. Strange's dishonesty. However, it is simultaneously very sad: it appears that Mr. Strange so needs to be viewed as a pillar of his community and workplace that he was willing to embellish his civic and employment record at a risk to himself that far exceeded any plausible gain. Perhaps the most telling fact in the recently developed circumstances is the observation of his, now estranged brother, Dr. Jonathon Strange in a recent FBI 302. He noted that Mr. Strange has a wall of plaques and certificates—including a Ph.D. of questionable merit—devoted to creating the impression that Mr. Strange is a counselor. Dr. Strange told the FBI, "that Kent always tries to be someone he is not. Strange added that Kent liked when someone was reliant on him. Strange explained that Kent would be better off just being himself." Doc. No. 84-1.

There is no excuse for lying to the court and it is always serious. But there is a vain, eccentric character to these misrepresentations that defies straining them through the Guidelines. Accordingly, a 5-point guidelines increase is not a reasonable within the meaning of the law.

Respectfully Submitted,

/s/Daniel M. Erwin/s/
By Daniel M. Erwin (ct28947)
FEDERAL DEFENDER'S OFFICE
265 Church Street
New Haven, CT 06510
Tel: (860) 493-6260
Fax: (860) 493-6269
Email: Daniel_Erwin@fd.org

CERTIFICATION OF SERVICE

This is to certify that on November 4, 2021, a copy of the forgoing was filed electronically via the Court's CM/ECF system, and by that system, counsel for the Government has been provided with a copy of the forgoing.

/s/Daniel M. Erwin/s/
Daniel M. Erwin