UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 3:20CR97 (MPS) |
| | : | |
| STEVEN STRANGE | : | November 12, 2021 |
| | : | |

GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

The United States submits this supplemental memorandum in aid of the sentencing of the defendant Steven Strange in response to the defendant's previously filed supplemental sentencing memorandum. The defendant's sentencing is presently scheduled for Friday, November 18, 2021, at 2 pm. The Probation Office has submitted a Third Addendum to the Presentence Report, after the preparation of the final PSR, which outlines a fraud perpetrated by the defendant by submitting three fraudulent letters to the Court in an effort to markedly influence the upcoming sentencing. Because the fraud was uncovered after the preparation of the final PSR, the Probation Office cannot revise the final PSR unless ordered to do so by the Court. *See* Third Addendum, at 1 ("As the records and information were received after the final report was disclosed, no changes can be made to the final PSR unless ordered by the Court.") Nonetheless, the Third Addendum goes on to outline the defendant's significant efforts to defraud the Court with the plain intent of securing a lower sentence. Taking this conduct into account would result in modifying the relevant Guidelines calculation by a two level upward obstruction enhancement and in denying a three level reduction for acceptance of responsibility. As a result, the new advisory Guidelines imprisonment range should be 57-71 months imprisonment with a new fine range of $20,000 to $200,000.

For the reasons discussed in the Third Addendum and discussed below, the Government respectfully requests that the Court order the final PSR be amended to include the new information and the new Guidelines calculation.   Further, to punish the original crime and this continuing effort to defraud, the Government respectfully requests that the Court impose a sentence within the newly calculated Guidelines range of 57-71 months imprisonment.[1]

<u>Background</u>

The relevant facts and the legal background are set forth in the Third Addendum and in the various FBI 302s attached thereto and will not be repeated here.  Based on the defendant's recent submission, it appears that the defendant does not deny that he fabricated three letters submitted for the Court's consideration at sentencing.  The letters were purportedly from his employer (who claimed the defendant essential to an ongoing business), his doctor (who suggested that the defendant need maintain his present medical regimen and cadre of medical providers), and a friend (who purportedly reaffirmed the defendant's good character and ongoing devotion to his wife).

The fraudulent letter, purportedly from employer William Kornegy, contained various statements, strongly arguing for a non-jail sentence. The letter should be considered in its entirety, but some examples include:

- "I [Mr. Kornegy] come before the court to ask the court to provide alternative sentencing to Mr. Strange.  My reasoning for asking of this is for the benefit and survival of my company. . . ."

- "Our food manufacturing company is the one that relies heavily on Mr. Strange the most."

---

[1]   In addition, while the facts here seem obvious that the defendant willfully intended to obstruct the sentencing in this case, the Government respectfully requests that the Court make such a finding on the record to avoid any issue regarding relevant findings of fact.  *See United States v. Butters*, 513 Fed. Appx. 103, 105 (2d Cir. 2013) (remanding so that the district court could make express findings regarding the defendant's intent to obstruct).

- "Our business depends on his continued involvement for the survival of our company."

- "Without his company presence we will lose these certifications. Causing us to have to close."

- "In the years of his pharmaceutical experiences he has obtained vast knowledge that as a startup we cannot afford to lose. Additionally we could not afford to hire the number of people that would be required to replace the knowledge of this individual."

- "Putting this in a monetary value. We employee 37 labors, 4 office staff, 1 managerial staff (Mr. Strange). In a time when unemployment is at a high here in North Carolina. Jobs are needed. Each and everyone. For us to shut down would also cause Ripe Revival, LLC to close, file bankruptcy, and forfeit it contracts, research and development."

- "It is with great humbleness I ask the court for mercy. . . . My family has everything tied up in to this company. The manufacturing division is 80% of our company. My two sisters, our parents, and uncle risk in losing everything if this company founders."

The fraudulent letter, purportedly from Doctor Robert Bala, contained various statements, strongly arguing for a non-jail sentence by suggesting that the defendant had an intact medical team treating his various ailments – with the inference that BOP could not replicate such services. The letter should be considered in its entirety as, by its length, the defendant plainly intended to suggest the doctor's personal commitment to the defendant's treatment, but some examples include:

- "I have been Mr. Strange's Primary Care Physician for several years here at Rocky Mount Family Medical Center. He has been a patient on recorded for over 30 years. I write you this letter as PCP only to ensure that the court has an understanding of his numerous medical conditions. Understanding that ongoing care and treatment is essential for maintaining of Mr. Strange's continuous medical welfare. I am just one of the many physicians that are instrumental in his health and well being."

- "The reason that he is in the state of fair health today is because of the list of doctors attached see Mr. Strange every 30-90 days as required to treat him for his illness. Failure to continue these treatments, medications, and transfusion will result in a return of his failing health state."

- "Currently he has a good health team, private insurance, and medications that should

assure him a long healthy life."

The fraudulent letter, purportedly from the defendant's friend Thomas Ellington, contains various statements that seek to paint a picture of the defendant as a caregiver for Mr. Ellington and his wife and for the defendant's wife and son, echoing the request for a no-jail sentence:

- "I hope to address to the court the type of person Mr. Strange is.   How his kindness toward my wife and I helped us during our greatest time of need."

- "But what I want you to know is this point.  Mr. Strange is truly a deep compassionate individual who cares for people.  This has been shown all throughout the years. Never any selfishness."

- "I know all that he has ever tried to do is help others.  Show kindness and mercy.  I just ask that the court please show him the return.  Kindness, mercy, and compassion.  Not only for him, but his wife and son.  Both of which need both his financial and intellectual guidance."

The Government submits that each of these letters, now known to have been completely fabricated, were plainly intended to promote a false narrative that the defendant had to avoid incarceration to avoid the collapse of a business, to maintain his medical health through continued care by a dedicated medical team, and to allow him to provide financial and other assistance to his wife.   As was learned in unpacking the recent fraud, the defendant has been fired by his former employer after two days employment and was in no way essential to that business; the doctor has no recollection of the defendant or of some cohesive medical treatment team; and the defendant is no longer with his former wife.   In fact, as the defendant's brother admitted, the defendant and his wife are no longer together and that his wife handles her own bills and has a separate support system.

<u>The Application of U.S.S.G. 3C1.1</u>

A two level enhancement under U.S.S.G Section 3C1.1 applies:

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede,

4

the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense. . .

*Id.*

In unpacking Section 3C1.1, the courts have interpreted the first clause – clause (1) -- to be a temporal restriction as to when the obstructive conduct need take place for an enhancement to apply, namely, at some point after the commencement of an investigation up through the time of sentencing. *United States v. Byors*, 586 F.3d 222, 227-228 (2d Cir. 2009); *See United States v. Khimchiachvili*, 372 F.3d. 75, 78 (2d Cir. 2004), *vacated on other grounds sub nom. Berwick v. United States*, 544 U.S. 917 (2005) ("The first clause of this guideline places a temporal requirement on the defendant's obstructive conduct."). The second clause – clause (2) – is considered the "nexus element" and simply requires that the obstructive conduct have some relation to the disposition of the offense of conviction. *Byors*, 586 F.3d at 227-228 ("a nexus element, which requires that the obstructive conduct relate to the offense of conviction"). This second clause was not intended to narrow the scope of 3C1.1, but instead to refine it to focus on punishing willful conduct that would in any way impede the successful prosecution and sentencing of the defendant. Far from the core obstructive conduct at issue in this case closely linked to altering the ultimate sentence, courts have held that obstructive conduct might also include more indirect efforts to impede a case, including lying to obtain release on bail or seeking to obstruct closely related cases, separate from a defendant's own. *United States v. Gumbs*, 286 Fed. Appx. 763, 765 (2d Cir. 2008) (explaining how lying to obtain bail might warrant enhancement); *United States v. Mollner*, 643 F.3d 713, 717 (10th Cir. 2011) (amendment adding clause two made clear expansive reading of conduct warranting enhancement was correct, allowing enhancement for efforts to obstruct beyond influencing the sentencing on the

instant offense). *See Khimchiachvilli*, 372 F.3d at 80  (enhancement warranted for any effort to willfully and materially impeded the search for justice in the instant offense).  *See also United States v. Richert*, 685 F.3d 760, 767-768 (8th Cir. 2012) (the defendant pled to bank fraud charges; later he forged letters from his doctor for sentencing, claiming addiction to pain relievers, seeking a reduced sentence and potentially qualifying for a rehab program in prison; the district court imposed obstruction enhancement and denied acceptance of responsibility; upheld on appeal); *see United States v. Maurer*,  76 F.Supp.2d 353, 358-359 (S.D.N.Y. 1999) (various acts warranting obstruction enhancement, including forged letter in connection with sentencing regarding community service).

In the present case, the defendant's conduct – falsely adopting the identify of others and submitting fraudulent letters to the sentencing court to markedly influence the sentencing of the defendant --  was a clear attempt to obstruct the administration of justice with respect to the sentencing of the offense of conviction.  In other words, as to the first clause noted above, the obstructive conduct broadly fell within the temporal limitations proscribed by 3C1.1, namely, the conduct happened during the investigation, prosecution or sentencing of the defendant for the specific charged wire fraud.[2] *See United States v. Khimchiachvilli*, 372 F.3d. at 78 ("The first clause of this guideline places a temporal requirement on the defendant's obstructive conduct.").

Further, the obstructive conduct, having occurred within that temporal limitation discussed above, meets the nexus element as it was plainly "related to" the sentencing disposition of the wire fraud charge.  In fact, in this case, the nature of the obstructive conduct is

---

[2] The Application Notes to 3C1.1 makes clear that even the temporal component need be broadly construed as the obstructive conduct "that occurred prior to the start of the investigation of the instant of offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation and prosecution of the offense of conviction." Application Note 1.

particularly relevant as it involved conduct that closely mirrored the exact fraudulent conduct for

which the defendant is to be sentenced.

Application Notes to 3C1.1 make clear the applicability of the enhancement to the

conduct at issue in this case.   While obstructive conduct can vary widely in nature, degree of

planning and seriousness, Application Note 4 "sets forth examples of the types of conduct to

which this adjustment is intended to apply."  *See* App. Note 3.   Application Note 4 goes on to

provide a "*non-exhaustive* list of examples of the types of conduct to which" the adjustment

applies.  *Id.* (emphasis added).   Such examples may include:

- "producing . . . a false . . . document . . during . . . [a] judicial proceeding;

- "providing materially false information to a judge"; and

- "providing materially false information to a probation officer in respect to a presentence
  or other investigation for the court."

Application Note 4.  The Application Notes go on to explain that "material" information means

"information that, if believed, would tend to influence or affect the issue under determination."

*Id.* n. 6.  Here there should be no doubt that the proffered fraudulent information, if believed,

would tend to influence or affect the sentencing determination.   The fraudulent letters were

carefully crafted to raise recognized grounds for leniency, including (1) the purported dramatic

negative impact incarceration of a defendant would have on dozens of fellow employees; (2) the

particulars of the defendant's ongoing medical care with the message not to disturb the existing

medical team; and (3) the defendant's good character and purported need to provide a spouse

continued financial and other guidance.   Other courts have found the obstruction enhancement

applicable for just these types of fraudulent sentencing letters. *See United States v. Richert*, 685

F.3d 760, 767-768 (8th Cir. 2012) (forged letters from his doctor for sentencing); *see United

States v. Maurer*,  76 F.Supp.2d 353,  358-359 (S.D.N.Y. 1999)  (various acts warranting

obstruction enhancement, including forged letter in connection with sentencing regarding community service).

The defendant, however, contends that the obstruction enhancement should not apply under an unduly cramped reading of how the obstructive conduct must relate to the offense of conviction.  Without any legal case support, the defense argues that the enhancement only applies to obstructive conduct that seeks to mislead the Court regarding the underlying facts of the charged wire fraud.  *See* Def. Supp. Mem. at 3 (explaining how the fraudulent letters did not present facts that challenged the underlying facts of the offense of conviction).  While the defendant's lying to the Court about the specific facts of his charged fraud would constitute obstruction, the courts have recognized a wide range of other obstructive acts that have impeded the search for justice at sentencing. The defendant's cramped reading of 3C1.1 is entirely at odds with the Guidelines second prong's requirement that, once the temporal requirements are met, the conduct need merely "relate to" the offense of conviction or to relevant conduct or even a closely related offense.  In fact, the non-exhaustive examples of obstruction listed in the Application Notes go far beyond a defendant misrepresenting the facts of a charged offense and includes threatening a juror; producing a false document or record; escaping from custody or willfully failing to appear; providing materially false information to the judge; providing materially false information to a probation officer; and failing to comply with a restraining order. *See* Application Note 4.

The defendant's interpretation is also at odds with its cited authority, *United States v. Khimchiachvilli*, 372 F.3d. 75, 78 (2d Cir. 2004).  In that case, the defendant early on swore out a false financial affidavit in order to obtain court-appointed counsel.  The district court later imposed an obstruction enhancement under U.S.S.G. Section 3C1.1 for this step taken early in

the prosecution.  In reversing that application, the Second Circuit noted that the focus of the obstruction enhancement should be whether the defendant "willfully and materially impeded *the search for justice in the instant offense.*"  *Khimchiachvilli*, at 80 (emphasis in original; citation omitted).   The Court explained that the conduct could not simply be a misrepresentation, but need have the potential to impede, among other things, the sentencing of the defendant.  *Id.*  The Court determined the misrepresentations on a financial affidavit to obtain appointed counsel early in the case did not demonstrate the requisite intent.  *Id.*   Similarly, the Court explained that a defendant threatening a drug treatment counselor pending sentencing did not warrant the enhancement because the threats were not intended to willfully interfere with the disposition of criminal charges at sentencing.  *Id.* at 78.  By further example, a misstatement to a parole officer regarding a defendant's drug use was not intended to alter the sentencing in the case and did not warrant the enhancement.  *Id.* at 79.  In short, the Second Circuit reaffirmed the common sense understanding that an obstruction enhancement *would apply* if it had the potential to impede the just sentencing of the defendant – which is exactly the issue in *this* case. *Id.*   *Khimchiachvilli* supports the Government's application of the obstruction enhancement here. *See also United States v. Richert*, 685 F.3d at 767-768 (forged doctor letter); *United States v. Maurer*,  76 F.Supp.2d at 358-359 (forged community service letter).

The defendant further argues that the three letters should not be deemed "material" to sentencing matters in this case.  Def. Mem. at 4-6.   A review of the letters quickly dispels this position where it is plain that the fraudulent letters were seeking to influence the Court into giving a more lenient sentence for the reasons noted above.[3]  Recognizing the power of the

---

[3] The defendant tries to distinguish application notes 4(c) by importing a definition of "document" to mean "legal document" and argue that the letters are not legal documents.  There is no basis for reading this limiting language into the Note, but, in any event, the Application

submitted letters, defense counsel argues that counsel didn't explicitly argue for the departures suggested by the letters in the previously submitted sentencing memorandum.   But that is a distinction without a difference. The Court in evaluating all factors relevant to sentencing reasonably would have considered the letters in fashioning the appropriate sentence and would likely have been markedly influenced by the entreaties made by the identified third parties.

Finally, defense counsel contends that the Court should not deny the defendant credit for acceptance of responsibility even if there was obstructive conduct because this case presents extraordinary circumstances where credit for acceptance is warranted.  Def. Mem. at 7.  It is a rare circumstance where a defendant's efforts to obstruct the fair disposition of a defendant's case does not implicate acceptance of responsibility and typically involves isolated efforts at obstruction early in an investigation where a defendant voluntarily terminated obstructive conduct.  *See, e.g., United States v. Teyer*, 233 Supp. 2d 359,  368 (S.D.N.Y. 2004) (distinguishing between early obstruction and obstruction after a plea, which "without question" might well establish defendant's lack of acceptance).   It is hard to see how the Court could find that the defendant accepted responsibility here where the obstructive conduct took place long after his guilty plea, just prior to his anticipated sentencing date with the obvious intent to markedly impact the sentencing.  Faced with the upcoming sentencing, the defendant crafted not one, but three letters to deceive the Court.   Each letter showed a fair degree of planning and care to address separate mitigating factors.  The letters were submitted at the 11th hour in a manner to create the maximum impact and afford the Government the least amount of time to respond.   In fact, in most instances, the Government would have taken the letters at face value, and the defendant would have been sentenced relying on the letters.   Further, the letters reflect the exact

---

notes are expressly non-exhaustive, and the letters offered in this case were plainly material.

type of conduct to which the defendant claims to have accepted responsibility by pleading guilty – the stealing of identities, forging documents and submitting the documents in an effort to defraud those reviewing the materials.  The defendant does not warrant credit for acceptance of responsibility given the conduct here.

<u>CONCLUSION</u>

For the foregoing reasons and for the reasons addressed in the Government's prior sentencing submission, the Government respectfully requests that the Court impose a sentence consistent with the Guidelines sentencing range of 57-71 imprisonment.

Respectfully submitted,

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY

*/s/Christopher W. Schmeisser*

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct14806
christopher.schmeisser@usdoj.gov
157 Church Street, 25TH Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5377

CERTIFICATION OF SERVICE

I hereby certify that on November 12, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.  The foregoing has also been sent by email to:

> Ryan C. Skal
> U.S. Probation Officer
> U.S. Probation Office
> 450 Main St.
> Hartford, CT 06103

*/s/Christopher W. Schmeisser*
Christopher W. Schmeisser
